AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
2/18/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: eva  DEPTUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
Feb 18, 2021
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY Nancy Boehme
Deputy Clerk, U.S. District Court

United States of America

v.

RUSSELL JON COOPER,

Defendant.

Case No. 8:21-mj-00109-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 26, 2021 in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
Farshid Hashempour
*Complainant's signature*

Farshid Hashempour, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: February 18, 2021

**DOUGLAS F. McCORMICK**
*Judge's signature*

City and state: Santa Ana, California

Hon. Douglas F. McCormick, US Magistrate Judge
*Printed name and title*

AUSA: Daniel Ahn (714-338-3539)

**A F F I D A V I T**

I, Farshid Hashempour, being duly sworn, hereby declare and state as follows:

## I. INTRODUCTION

1. I am a Detective with the Santa Ana Police Department ("SAPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI"). As a TFO with the FBI, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am assigned to the Orange County Violent Gang Task Force ("OCVGTF"). The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the SAPD, and detectives from the Anaheim Police Department. The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County. Prior to this assignment with the FBI, I was a SAPD Police Officer and have been so employed for approximately nineteen years.

3. I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs. During my tenure as a Police Officer, as well as an FBI TFO, I have conducted and participated in numerous

investigations of criminal activity, specifically including narcotics trafficking and violent offenses committed by street gangs. Since joining the OCVGTF in 2010, I have specialized in investigations of the Mexican Mafia and its subordinate gangs in Orange County. As part of these investigations, I have also learned about the drug trafficking organizations that supply street gangs with illegal narcotics.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint and arrest warrant against RUSSELL JON COOPER ("COOPER") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii): Possession with Intent to Distribute Methamphetamine.

5. The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

6. On January 26, 2021, a Costa Mesa Police Department ("CMPD") Officer, while working with the CMPD Traffic Safety Bureau, was conducting traffic enforcement at an intersection in

the city of Costa Mesa, California. While parked facing southbound, the Officer observed a gray Saturn drive through the intersection to make a right hand turn without stopping, in violation of the California Vehicle Code ("CVC"). The CMPD Officer conducted a traffic stop on the vehicle for the CVC violation, near the intersection where the infraction occurred. As the CMPD Officer approached the vehicle, he observed a large white cloud of powder coming from the driver's side window. The Officer contacted the driver, COOPER, and observed an open bottle of alcohol in the center console.

7. The CMPD Officer also observed a purple and yellow colored box on the passenger seat of COOPER's vehicle. The Officer could see a white powered substance resembling Fentanyl on top of the box's closed lid. COOPER told the Officer that the white powdered substance was baby powder that he used for his head. COOPER further explained that the smoke coming from the vehicle was from his cigarette or "vape" device. The CMPD Officer conducted a records check on COOPER and found that his California Driver License had been suspended. When asked about the contents of the box, COOPER told the Officer that he did not know what was inside the box because it did not belong to him.

8. Upon the arrival of other CMPD Officers, COOPER was asked to exit his vehicle. COOPER exited his vehicle and consented to a search of his person. During the pat down search, the Officer found a black switchblade knife in COOPER's right front pants' pocket, in violation of a California Penal Code. COOPER was then handcuffed for purposes of officer safety

and advised that he was not under arrest.  Due to the presence of the knife and white powder on the box that the Officer had seen earlier, a probable cause search was conducted of COOPER's vehicle.  The Officer searched the purple and yellow box and found a clear Ziploc bag containing a white powdered substance that he recognized as Fentanyl.  In addition to the white powdered substance, the Officer found numerous Ziploc baggies, a digital scale, and a white crystalline substance resembling methamphetamine in the same box.  Under the rear passenger seat, the CMPD Officer found a Ziploc baggie containing blue and white pills, similar in appearance to Xanax.  In the trunk of the vehicle, a gray colored digital safe was found.  COOPER initially told the Officer that the safe was not his, but later provided the Officer with the code to the safe.

     9.   While at CMPD Jail, the Officer used the code to open the safe and found four clear Ziploc bags containing a white crystalline substance the Officer recognized as methamphetamine.  The Officer read COOPER his Miranda Rights, which COOPER acknowledged before providing the Officer with a statement.  COOPER denied that the contents of the purple and yellow box belonged to him, but did tell the Officer that the methamphetamine inside the safe belonged to him.  COOPER told the Officer that he has been using methamphetamine for the last 10-20 years.

     10.   At CMPD, the Officer processed and weighed the narcotics seized during the investigation of COOPER.  The total weight of all of the white crystalline substance was

approximately 123 grams.  The Officer weighed the white powder-like substance believed to be fentanyl, which was found to weigh approximately 118.4 grams.  The Officer later counted the Alprazolam pills, which were packaged separately by color, blue and white.  The CMPD Officer counted the blue Alprazolam pills and found there to be approximately 323 pills.  The Officer also counted the white Alprazolam pills, which totaled approximately 20 pills.

## IV. STATEMENT OF PROBABLE CAUSE

11.   I have reviewed the police report prepared by CMPD Officer J. Schramm regarding the January 26, 2021, arrest of COOPER.  Based on my review of the reports, I have learned the following facts:

    a.   On January 26, 2021, at approximately 2:58 p.m., CMPD Officer Schramm, who was working in a uniformed capacity with the CMPD Traffic Safety Bureau, was conducting traffic enforcement of the four-way stop sign controlled intersection of Del Mar Avenue and Elden Avenue, in the city of Costa Mesa, California.  As Officer Schramm was monitoring the intersection, he observed a gray 2006 Saturn Vue, bearing California License Plate 5SPX108, drive eastbound on Del Mar Avenue approaching the stop sign of Elden Avenue without stopping as it made a right turn through the intersection and onto the southbound lanes of Elden Avenue, in violation of CVC § 22450(a).  Officer Schramm initiated a traffic stop on the gray Saturn Vue, which yielded to his lights and siren along the west curb line of Elden Avenue, south of Del Mar Avenue.

      b.    Officer Schramm approached the driver's side of the Saturn and observed a large white plume of powder emanating from the driver's side of the window. The cloud of powder appeared dense and did not dissipate like smoke. Officer Schramm contacted the driver, identified by his California Identification Card as COOPER, and informed him that he had been stopped for the aforementioned traffic violation. As Officer Schramm spoke to COOPER, Officer Schramm noticed that the powder continued to dissipate as the cloud continued to exit from the window. While speaking to COOPER, Officer Schramm observed an open bottle of a "Smirnoff" alcoholic beverage in the center console of the vehicle. Due to the condensation that was visible on the container of "Smirnoff", Officer Schramm surmised that the alcoholic beverage was still cold and had been recently opened. COOPER handed Officer Schramm the bottle before telling the Officer that he had only consumed a "sip" of the beverage.

      c.    While speaking to COOPER, Officer Schramm observed a purple and yellow colored box on the passenger seat of the Saturn in plain view. The box had a white powder-like substance on top of the closed lid, which Officer Schramm recognized as being consistent with the appearance of Fentanyl. When asked about the smoke coming from the window of his vehicle, COOPER told Officer Schramm that it was baby powder he had put on his face. Officer Schramm asked COOPER if he smoked any form of illegal substances. COOPER responded, "No, sir." While questioning COOPER, Officer Schramm noticed objective symptomology consistent with being under the influence of a

6

controlled substance to include slurred speech and watery eyes. COOPER informed Officer Schramm that his California Driver License had been suspended. Officer Schramm asked COOPER again about the white powder and was again told that it was baby powder. Officer Schramm asked COOPER if he would show him the contents of the purple and yellow box. COOPER replied that the box was locked. Officer Schramm asked COOPER to produce the baby powder that created the white cloud he had observed earlier, but COOPER explained to Officer Schramm that the baby powder was "not in there." Despite telling Officer Schramm that he had applied baby powder to his face, Officer Schramm failed to see any powder on COOPER's shirt, face, head, or hat. COOPER told Officer Schramm that the cloud of powder was smoke from a cigarette or a vaping device a "kid" was using to smoke near the intersection where the traffic violation occurred.

   d. Officer Schramm then requested an additional Officer to his location. While waiting for the additional CMPD Officer, Officer Schramm conducted a records check of COOPER, which revealed that his California Driver License had been suspended since June 19, 2014. COOPER's operation of a vehicle with a suspended California Driver License was in violation of CVC § 14601.1(a).

   e. Officer Schramm asked COOPER if he sold drugs. COOPER responded, "I have, I, I, I'm not, I'm accused of it, yes." Officer Schramm then asked COOPER if he had sold drugs in the past. COOPER replied, "I've been accused of it." When asked the type of narcotics that COOPER was accused of selling,

7

COOPER stated, "Methamphetamine." Officer Schramm asked COOPER if the box contained methamphetamine. COOPER told Officer Schramm that he did not know what was inside the box because it did not belong to him and could not adequately explain to Officer Schramm why the box was covered in white powder.

      f. Upon the arrival of Officer Condon and Officer Hickman at the location of the traffic stop, Officer Schramm asked COOPER to exit the Saturn. COOPER exited the vehicle and consented to Officer Schramm's request to conduct a search of his person. During a search of COOPER's right front pants' pocket, Officer Schramm found a black switch blade knife, in violation of California Penal Code ("CPC") § 21510(b). Officer Schramm secured the knife for evidence and handcuffed COOPER. Officer Schramm informed COOPER that he was not under arrest, but was placed in handcuffs for purposes of officer safety since COOPER had not disclosed that he had a concealed knife in his pocket. Officer Schramm seated COOPER on the curb and asked COOPER if he could search the vehicle. COOPER told Officer Schramm, "No." Based on his training and experience and the totality of his observations, Officer Schramm concluded that he had probable cause to search COOPER's Saturn vehicle.

      g. During a search of the vehicle, Officer Schramm opened the purple and yellow colored box on the passenger seat. In the bottom portion of the box, Officer Schramm found a clear Ziploc style bag containing a large brick of a white powder-like substance, which he recognized as being consistent with Fentanyl. Officer Schramm removed the baggie and held it out

for COOPER.  When Officer Schramm asked COOPER for the name of the substance, COOPER responded, "Fentanyl."  Officer Schramm moved the purple and yellow box to the hood of the Saturn, where he continued his search.  The bottom compartment of the box contained approximately 100 clear Ziploc style baggies, which Officer Schramm recognized as packaging material indicative of narcotic sales.

      h.   In the top portion of the box, Officer Schramm found a digital scale that was in working order.  The digital scale also had white crystalline residue on it.  The digital scale and packaging material supported Officer Schramm's belief that these items were evidence of narcotic sales.  As Officer Schramm continued to search the top portion of the box, he found a clear Ziploc style bag containing a large quantity of a white crystalline substance resembling methamphetamine.  Officer Schramm held out the bag of white crystalline substance and asked COOPER to identify the substance.  COOPER replied, "Meth."  Under the rear passenger seat, Officer Schramm found a clear Ziploc style baggie containing a large amount of blue and white pills.  The blue pills were separated from the white pills in their own individual plastic bag.  Based on his training and experience, Officer Schramm recognized the blue and white pills to be consistent with Alprazolam, or Xanax.  Officer Schramm found a gray case in the trunk compartment of the vehicle, which contained a black personal safe.  Officer Schramm attempted to open the safe, but could not because it was passcode protected.  Officer Schramm asked COOPER for the passcode, but COOPER told

Officer Schramm that the safe was not his and he did not know the code. Officer Schramm seized the safe and contraband as evidence.

    i. COOPER was arrested and transported to CMPD. While transporting COOPER, Officer Schramm asked COOPER again for the passcode to the safe. COOPER initially told Officer Schramm he did not know, but eventually told Officer Schramm that he believed the code was the number 4444. COOPER later typed in the passcode to open the safe, where he discovered that the safe contained four clear Ziploc style bags containing a white crystalline substance resembling methamphetamine.

    j. At CMPD, COOPER was read his Miranda Rights by Officer Schramm. COOPER acknowledged his rights and denied selling illegal drugs. COOPER also denied knowing about the narcotics found in the purple and yellow box. Cooper admitted that the safe that was found in the trunk of the Saturn belonged to him. COOPER admitted that the methamphetamine inside of the safe belonged to him. COOPER explained that he had been using methamphetamine for approximately 10-20 years. COOPER started using 1/10 of a gram of methamphetamine to get high and now his usage is up to a half of a gram of methamphetamine per day.

    k. At CMPD, Officer Schramm processed and weighed the narcotics seized during the investigation of COOPER. The total weight of all of the white crystalline substance seized in this case was approximately 123 grams. Officer Schramm weighed the white powder-like substance believed to be Fentanyl, which was found to weigh approximately 118.4 grams. Officer Schramm

later counted the Alprazolam pills, which were packaged separately by color, blue and white.  Officer Schramm counted the blue Alprazolam pills and found there to be approximately 323 pills.  The Officer also counted the white Alprazolam pills, which totaled approximately 20 pills.

      l.   Based on my training and experience, which includes observing methamphetamine and fentanyl, I submit that there is probable cause to believe that the narcotics located during the search of COOPER's person by CMPD are in fact methamphetamine and fentanyl.  Also based on my training and experience, both 123 grams of methamphetamine and 118 grams of fentanyl are distribution amounts.

## V. CONCLUSION

    12.  For all the reasons described above, there is probable cause to believe that COOPER has committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii): Possession with Intent to

//

//

Distribute Methamphetamine.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of February 2021.

**DOUGLAS F. McCORMICK**
HONORABLE DOUGLAS F. MCCORMICK
UNITED STATES MAGISTRATE JUDGE

12